IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY PARKER | ) |
| | ) |
| v. | ) NO. 3-14-0555 |
| | ) JUDGE SHARP |
| NANCY BERRYHILL,[1] ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY | ) |

MEMORANDUM

Pending before the Court is Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 15). For the reasons stated herein, Plaintiff's Motion is DENIED, and the decision of the Social Security Administration is AFFIRMED.

INTRODUCTION

This is a civil action for judicial review of the Social Security Administration's denial of benefits to Plaintiff Johnny Parker on October 4, 2012. Plaintiff filed a Title II application for disability and a Title XVI application for supplemental security income on February 9, 2011. In both applications, he alleged disability beginning on July 1, 2006.[2] The Social Security Administration ("SSA") denied both applications. Thereafter, Plaintiff filed a written request for a hearing, and an Administrative Law Judge ("ALJ") held a hearing on September 20, 2012. The ALJ determined that Plaintiff was not disabled under the Social Security Act. Administrative Record ("AR"), found at Docket No. 11, p. 14.[3]

---

[1] Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017.

[2] At the hearing, Plaintiff amended his alleged onset date to July 22, 2009.

[3] The Court cites the AR by the page numbers which are stamped in the bottom right corner of the record.

ADMINISTRATIVE HEARING

The ALJ heard testimony from the Plaintiff and from Melissa Neal, a vocational expert. Plaintiff testified that he last worked in 2006 as a truck driver. He left because he had a DUI which revoked his license and because his feet "got to bothering" him. AR, pp. 38-39. He testified that he was capable of driving, but his license was still suspended. AR, pp. 41-42. He stated that he works on old cars for a hobby, and he was still able to do that, as long as he was not standing up very much. AR, p. 43. He testified that he tore down engines and rebuilt them. AR, p. 44.

Plaintiff told the ALJ that his feet bother him a lot when he is standing up, and after about two hours, he has to find a place to sit down. AR, p. 46. He stated that, if he did not sit down, both feet swelled up. *Id*. He testified that he could sit for about 30 minutes before he had to stand up, and he could walk for about ten minutes before he had to sit down. AR, p. 49. He said that his worst pain was in his feet, particularly his left foot, and that he had that pain all the time. *Id.* at 52-53. Plaintiff testified that he did not do grocery shopping, but he was able to do his own laundry, cook, and mow grass with a self-propelled push mower. AR, p. 54. He stated that he also had pain in his right shoulder daily from a broken collar bone. AR, pp. 58-59.

The vocational expert answered three hypothetical questions from the ALJ. As relevant to this case on appeal, the vocational expert testified that a person of Plaintiff's age, education and work experience who could continuously lift up to 20 pounds, continuously carry up to 10 pounds, occasionally lift or carry 21-20 pounds and frequently lift or carry 11 to 20 pounds, stand six hours total, walk five hours total, and sitt eight hours total, occasionally reach overhead with the right upper extremity, frequently reach or push/pull with the right hand, continuously perform all other activities with both hands, occasionally climb, crouch or crawl, frequently stoop or kneel and continuously balance could perform Plaintiff's past work, so long as he did not have to do significant lifting and

carrying. She stated that the record showed that Plaintiff's actual past work did not involve lifting or carrying - he was mainly driving the truck. AR, pp. 63-65. Also, with these stipulations, she testified that there are other jobs in the economy which the person could perform, including a carrier, transporter, and sweeper. AR, p. 65.

THE FIVE-STEP INQUIRY

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

In determining disability, the SSA and the ALJ consider a five-step sequential evaluation process. The Sixth Circuit has described these five steps as:

(1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

(2) A claimant who does not have a severe impairment will not be found to be disabled.

(3) A finding of disability will be made without consideration of vocational factors if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

(4) A claimant who can perform work that he has done in the past will not be found to be disabled.

(5) If a claimant cannot perform his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).

## ADMINISTRATIVE DECISION

The ALJ in this case made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.

(2) The claimant has not engaged in substantial gainful activity since July 22, 2009, the amended alleged onset date.

(3) The claimant has the following severe impairments: residuals of remote injury, left lower extremity (at the foot), with arthritis; residuals of remote injury, with grade III acromioclavicular separation, right shoulder; disorder of the right lower extremity, with pain; and back disorder.

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(5) The claimant has the residual functional capacity to lift up to 20 pounds continuously and 21-50 pounds occasionally; carry up to 10 pounds continuously, 11-20 pounds frequently, and 21-50 pounds occasionally; sit for 8 hours total, stand for 6 hours total, walk for 5 hours total; and is further limited to jobs allowing for no more than frequent pushing, pulling or reaching (except overhead) and no more than occasional overhead reaching with the right upper extremity; no more than occasional climbing, crouching or crawling; and no more than frequent stooping or kneeling, but allowing for continuous balancing.

(6) The claimant is capable of performing past relevant work as a tractor trailer truck driver. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

(7) The claimant has not been under a disability, as defined in the Social Security Act, from July 22, 2009, through the date of [the ALJ's] decision.

AR, pp. 16-22.

## PLAINTIFF'S STATEMENT OF ERRORS

Plaintiff contends that the ALJ erred in the following ways:

(1) She significantly misrepresented and/or mischaracterized critical evidence of record regarding the severity of Plaintiff's impairments and the credibility of his allegations.

(2) Her denial of Plaintiff's claim at step four is inconsistent with the medical opinions of record, and her decision therefore lacks the support of substantial evidence.

(3) The credibility of Plaintiff's allegations was not properly evaluated and assessed as required by Social Security ruling 96-7p.

Docket No. 15-1, pp. 1-2.

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the ALJ and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If substantial evidence supports the ALJ's decision, the Court defers to that finding even if there is substantial evidence in

the record that would have supported an opposite conclusion. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

The Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). The Court has the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

## ANALYSIS

Dr. Keown's Opinions

Plaintiff argues that the ALJ failed to properly evaluate the opinions of the independent consultative medical examiner, Dr. Keown, and that there are inconsistencies in the ALJ's decision related to Dr. Keown. The ALJ stated that she provided "significant weight to the medical source statement of Dr. Keown from the May 2011 evaluation, except as qualified below." AR, p. 21. She stated that she provided less weight to Dr. Keown's assessments of only occasional to frequent use of the left foot when operating foot controls, an inability to walk a block at a reasonable pace on rough or uneven surfaces, and only short intervals of time the claimant could sit, stand or walk, at one time, "as these items received little support from the same objective findings, or from the balance of the medical evidence." *Id.*

Later in her opinion, the ALJ states that she is providing less weight to the State agency assessments and ultimately adopts Dr. Keown's assessments, "because the medical evidence of record well establishes the conclusion that the claimant has greater functional limitations." AR, p. 21. The Court believes the ALJ meant that Plaintiff has "greater functional limitations" than the State agency assessments reported. The ALJ does not say that she is adopting ALL of Dr. Keown's opinions, and

6

she has already identified the portions to which she is giving less weight, as indicated above. Nonetheless, Plaintiff contends that the ALJ failed to sufficiently explain or provide a basis for according less weight to some of Dr. Keown's opinions.

An ALJ must give the opinion of a *treating physician* controlling weight if she finds that opinion well supported and not inconsistent with the other substantial evidence in the record, *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004), but Dr. Keown is not a treating physician. Dr. Keown was not hired to treat Plaintiff; she examined Plaintiff one time, and she administered no treatment. Social Security regulations require the agency to provide good reasons for the weight given to a treating physician's opinion. *Id.; Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). But Dr. Keown is not Plaintiff's treating physician. Dr. Keown was a consulting physician, and her opinions need not be evaluated in accordance with the treating physician rules. *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 730 (6th Cir. 2013).

The ALJ's decision to place limited weight on part of Dr. Keown's assessment is supported by other evidence. Dr. Keown's own records indicate that she found Plaintiff to have full range of motion in his hips, knees and ankles, and her inspection of the bilateral feet was unremarkable. She also found no joint swelling. AR, p. 320; *see also* AR, p. 322 ("Right foot pain with unknown etiology, unremarkable physical exam").

In addition, Plaintiff's Veterans Administration ("VA") records indicate, as noted by the ALJ, that on January 17, 2012, Plaintiff was complaining about right shoulder and left foot pain. AR, p. 352. The physical exam revealed no tenderness, no swelling in any joints, and range of motion good in knee, hip, shoulder and elbow joints. AR, p. 354. The assessment of his left foot pain stated: "on pain meds by private pcp, at this time would like to cont with him, will monitor." *Id.*, p. 355. Again on May 23, 2012, the physician found no tenderness and no swelling in any joints on Plaintiff's

7

musculoskeletal exam. *Id*., p. 346. The assessment on that day with regard to his left foot pain again said "on pain meds by private pcp, at this time would like to cont with him, will monitor." *Id*.

Dr. Keown's report of Plaintiff's left-sided limp and her impression of a remote trauma of his left foot with posttraumatic arthritis do not preclude a finding that he could drive a truck within the limits she finds. Dr. Keown found that Plaintiff could operate foot controls continuously with his right foot and occasionally to frequently with his left foot. AR, p. 315. The ALJ did not ignore these findings in opining that Plaintiff could drive a tractor trailer truck, with certain limitations concerning lifting and carrying, as indicated by the vocational expert.

With regard to Dr. Keown's opinion that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces, the ALJ's failure to specifically adopt this finding does not change the result that Plaintiff could drive a tractor trailer truck. Plaintiff has not shown that driving a truck requires walking at a reasonable pace on rough or uneven surfaces, or at least not often.

Finally, Plaintiff argues that the ALJ should have given more weight to Dr. Keown's opinion that Plaintiff could sit for 3 hours, stand for 1 hour, and walk for 45 minutes without interruption, and that Plaintiff could sit for 8 hours total in a work day, stand for 6 hours total in a work day, and walk for 5 hours total in a work day. The ALJ found that Plaintiff could sit for 8 hours total, stand for 6 hours total, and walk for 5 hours total, exactly what Dr. Keown assessed. AR, pp. 17 and 314. The ALJ made no finding in her residual functional capacity concerning the Plaintiff's ability to sit, stand or walk at one time.

Step Four Determination

Next, Plaintiff argues that the ALJ's denial of Plaintiff's claim at step four is inconsistent with the medical opinions of record, and her decision lacks the support of substantial evidence. Step four requires the ALJ to determine whether a claimant has the residual functional capacity to perform the

requirements of his past relevant work. In making her finding at this step, the ALJ relied, in part, upon the testimony of the vocational expert at the hearing. The ALJ found that, in all material respects, the testimony of the expert was consistent with the information contained within the Dictionary of Occupational Titles. AR, p. 21. There were no objections raised as to the vocational expert's testimony at the hearing. AR, p. 22.

The ALJ presented a hypothetical situation to the vocational expert that fits the residual functional capacity she found for Plaintiff. AR, pp. 63-64. The expert testified that because the record revealed that Plaintiff's actual past work did not involve lifting and carrying (he was mainly driving the truck), his past work would be available. AR, p. 65. She also testified that there would be other work available, as indicated above. *Id*. The ALJ's determination of residual functional capacity is based on her evaluation of the medical and non-medical evidence and does not have to correspond exactly to a physician's opinion because Defendant has the final authority to make the determinations on disability.[4] *Rudd*, 531 Fed. Appx. at 728.

For these reasons and the reasons the ALJ properly evaluated the opinions of Dr. Keown, the ALJ's decision at step four of her analysis is not inconsistent with the medical records and is supported by substantial evidence.

Credibility of Plaintiff

Finally, Plaintiff argues that the ALJ did not properly evaluate the credibility of the Plaintiff.[5]

---

[4] Plaintiff also alleges that he should have been found "disabled" under the Medical-Vocational Guidelines found in the Code of Federal Regulations. The Court has reviewed the specific regulations cited (200.00(c), 201.02, and 202.02) and finds that the ALJ did not err in accepting the vocational expert's opinion that Plaintiff is not disabled under these guidelines.

[5] Plaintiff cites Social Security Ruling 96-7p in arguing that the ALJ's credibility evaluation falls short. Social Security Ruling 96-7p has been superseded by Social Security

Claimants challenging an ALJ's credibility determinations face an uphill battle. *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 488 (6th Cir. 2005). The ALJ's findings as to a claimant's credibility are entitled to deference because of the ALJ's unique opportunity to observe the claimant and judge his subjective complaints. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

In considering the Plaintiff's symptoms (as stated by Plaintiff at the hearing or as reported by Plaintiff to medical providers), the ALJ first determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. AR, p. 17. She found that Plaintiff's medically determinable physical impairments could reasonably be expected to cause some of his alleged symptoms. *Id*. She found, however, that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent that they were inconsistent with her residual functional capacity assessment. *Id*.

Among the factors which the ALJ considered in determining the weight to give to Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms were the fact that his injuries were very remote in time; the fact that he worked in substantial gainful employment for a number of years after the injuries; the fact that he stopped working, not because of any injury or disabling condition, but because of a DUI which revoked his driver's license; and the fact that there was nothing in the medical evidence or Plaintiff's testimony that indicated a change in his condition or abilities on or around his alleged onset date of July 22, 2009.

Furthermore, the ALJ cited to the medical records described above (Dr. Keown and the VA) to support her decision that Plaintiff's subjective complaints not be given full weight or credibility.

---

Ruling 16-3p. 2016 WL 1119029 at * 1 ( March 16, 2016). Ruling 96-7p was in effect, however, when the ALJ's decision in this case was made.

Although Plaintiff contends that the ALJ primarily focused on Plaintiff's statement that he continues to work on old cars, the Court disagrees. The ALJ cited numerous reasons, as explained above, for discrediting Plaintiff's testimony concerning his subjective complaints.

## CONCLUSION

For all these reasons, the Court finds that there is substantial evidence to support the findings of the ALJ and the correct legal standards were applied. Plaintiff's Motion for Judgment on the Administrative Record is denied, and the judgment of the Defendant is affirmed.

IT IS SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE